UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____3/31/2026____

ZENOLA AVES,

                    Plaintiff,

        -against-

NETWORK RECOVERY SERVICES, INC.,

                    Defendant.

25-CV-03566 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Zenola Aves ("Plaintiff") brings this action against Network Recovery Services, Inc. ("Defendant"), asserting claims under the Fair Debt Collection Practices Act ("FDCPA"). Before the Court is Defendant's motion to dismiss the Complaint for lack of standing and failure to state a claim. For the reasons that follow, the motion is DENIED.

**BACKGROUND**

I.      **RELEVANT FACTS[1]**

Plaintiff suffered an injury at her workplace on December 28, 2023. Compl. ¶ 12. She received immediate medical treatment at New York-Presbyterian Queens Hospital ("NYPQ"). *Id.* ¶ 13. On February 2, 2024, she "submitted an assertion of her worker's compensation rights." *Id.* ¶ 14. She underwent further treatment at NYPQ on March 29, 2024, and April 5, 2024. *Id.* ¶ 15. On August 27, 2024, the Worker's Compensation Board found that Plaintiff's injury was work-related. *Id.* ¶ 16.

---

[1] This Opinion draws its facts from Plaintiff's Complaint (Dkt. No. 1), the well-pleaded allegations of which are accepted as true for purposes of this Opinion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court refers to the parties' memoranda of law in support of and opposition to Defendant's motion to dismiss as follows: Dkt. No. 17 ("Mot."); Dkt. No. 19 ("Opp."); Dkt. No. 23 ("Rep.").

On January 27, 2025, Plaintiff received a debt collection letter from Defendant (the "Collection Letter"), which demanded payment for a delinquent $74.00 debt owed to NYPQ in connection with treatment for Plaintiff's work-related injuries (the "Debt"). *Id.* ¶¶ 21–23. On March 3, 2025, Plaintiff notified Defendant via mail that the Debt should be covered by her workers' compensation carrier and that Plaintiff was not responsible for paying any amount owed. *Id.* ¶ 32. On March 5, 2025, Defendant sent a "second notice" to Plaintiff, stating that she owed $74.00 and that payment was past due. *Id.* ¶¶ 23–24. "Worried that she would face ramifications if she [did] not make the payment, Plaintiff hesitantly paid the $74.00 to Defendant." *Id.* ¶ 34.

Plaintiff filed the Complaint on April 29, 2025, asserting claims under three provisions of the FDCPA. *Id.* ¶¶ 39–60. She alleges that Defendant knew or should have known that she was not responsible for the Debt pursuant to the New York Workers' Compensation Law and that the Collection Letter was misleading, including because it used language designed "to make Plaintiff believe that she was legally responsible" for the Debt. *Id.* ¶¶ 24–30. She asserts that Defendant's attempt to collect the Debt was "deceptive, misleading, unfair, unconscionable, and plainly violated numerous provisions of the FDCPA." *Id.* ¶ 31. She accordingly claims that Defendant injured her by "trying to extract, and actually extracting, money from Plaintiff that she did not owe." *Id.* ¶ 35. Specifically, she alleges that Defendant's "deceptive collection attempt caused Plaintiff to believe the [D]ebt was valid and enforceable, leading her to suffer financial loss by paying funds under false pretenses." *Id.* ¶ 38.

Defendant moved to dismiss the Complaint on June 27, 2025.  *See* Dkt. No. 16.  The motion is now fully briefed and before the Court for decision.  *See* Dkt. Nos. 19, 23.[2]

## DISCUSSION

Defendant seeks dismissal of the Complaint for lack of subject-matter jurisdiction because Plaintiff lacks standing to sue.  It argues that Plaintiff's alleged injuries are insufficient to confer standing because they were self-inflicted and the result of irrational fears of hypothetical future harm.  Defendant alternatively seeks dismissal on the grounds that the Complaint fails to state a claim under the FDCPA.  Defendant argues that Plaintiff merely raises a legal dispute as to the validity of the Debt and fails to allege any conduct by Defendant that violates the FDCPA.  Neither argument provides a basis for dismissal at this stage of the litigation.

## I.   LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(1) for Lack of Constitutional Standing

A district court must dismiss a claim under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015).[3]

Article III of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. Art. III.  "That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269,

---

[2] The parties have also submitted letters regarding supplemental authorities, which the Court has considered in connection with this Opinion.  *See* Dkt. Nos. 24, 30, 31.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

273 (2008). Standing consists of three elements: "(1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Id.* at 273–74. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The procedural posture of the case determines the applicable burden, as standing must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 at 561. "Thus, at the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003). To survive a motion to dismiss for lack of standing, a plaintiff need only "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

**B. Motions to Dismiss Under Rule 12(b)(6) for Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76,

4

79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

## II.    PLAINTIFF HAS ESTABLISHED STANDING

Defendant argues that Plaintiff's alleged injuries do not satisfy the concreteness standard set forth in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and its Second Circuit progeny, *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021), or the causation standard set forth in *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013). *See* Mot. at 4–9. The Court disagrees.

The Supreme Court instructed in *TransUnion* that the central question for assessing concreteness is "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *TransUnion*, 594 U.S. at 417. As the Second Circuit recognized in *Maddox*, "*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm . . . ." *Maddox*, 19 F.4th 58, 64 (citing *TransUnion*, 594 U.S. at 442). Following *TransUnion* and *Maddox*, courts addressing FDCPA claims in this Circuit "have uniformly held that absent specific allegations of reputational or monetary harm, plaintiffs lack constitutional standing." *Spira v. Trans Union, LLC*, No. 21-CV-2367 (KMK), 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022) (collecting cases).

Although future harms are generally too speculative to constitute a concrete injury under *TransUnion*, the Second Circuit has held that a "separate concrete, present harm caused by

5

exposure to the risk of future harm" can suffice. *See Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023) (holding that expenses incurred by plaintiff to mitigate the risk of identity theft following exposure of her personally identifying information were concrete harms that foreseeably arose from a substantial risk of future identity theft). In other words, "a plaintiff may satisfy the concrete-injury requirement by plausibly alleging 'out-of-pocket expenses' and 'lost time associated with attempting to mitigate' a risk of future injury." *Baptiste-Elmine v. Richland & Falkowski, PLLC*, No. 21-CV-04994 (RPK) (PK), 2025 WL 974346, at *6 (E.D.N.Y. Apr. 1, 2025). However, since a concrete injury must also be "fairly traceable to the challenged action," *Clapper*, 568 U.S. at 409, a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on . . . fears of hypothetical future harm that is not certainly impending," *id.* at 416. Thus, "out-of-pocket expenses and lost time must foreseeably arise from a material risk of future harm in order to independently support standing." *Baptiste-Elmine*, 2025 WL 974346, at *6.

Defendant cites a handful of cases involving plaintiffs who failed to establish standing despite incurring various costs in response to alleged FDCPA violations. *See* Mot. at 4–7. For example, in *Obstfeld v. Unifin, Inc.*, the plaintiff received a debt collection letter that never demanded payment but was "confusing regarding whether [plaintiff] will be sued." 774 F. Supp. 3d 497, 501 (E.D.N.Y. 2025). The court held that the plaintiff's "legal expenses stemming from the debt collection letter" were insufficient to confer standing because the letter "pose[d] only a speculative risk that the [d]efendant might sue to collect on the debt." *Id.* at 502–03. Along similar lines, the court in *Tschoe v. Monarch Recovery Management., Inc.*, found that legal fees a plaintiff incurred after "hir[ing] legal counsel to seek advice regarding how to proceed after receiving [defendant's] collection letter, and to bring [plaintiff's] lawsuit" did not establish

standing, particularly where "there [was] no evidence that [plaintiff] relied on [defendant's] letter in any way." No. 20-CV-07331 (PGG), 2024 WL 2814270, at *3–5 (S.D.N.Y. May 31, 2024); *see also Dacosta v. Associated Credit Servs., Inc.*, No. 24-CV-04833 (HG) (LB), 2024 WL 3966098, at *2 (E.D.N.Y. Aug. 28, 2024) (noting that "hiring an attorney . . . does not support standing because the burdens of bringing a lawsuit cannot be the sole basis for standing").

Seeking to analogize these cases, Defendant argues that Plaintiff fails to establish standing because she "alleges, at most, a self-inflicted injury that she voluntarily incurred due to her irrational fear of a hypothetical unspecified future harm." Mot. at 1. Defendant grossly mischaracterizes Plaintiff's alleged injury, as described in the Complaint. This is not the case of a plaintiff who suffered only an intangible injury or who incurred extraneous expenses to address the risk of a speculative future harm. This is the case of a plaintiff who allegedly paid a debt because the defendant falsely told her she was liable. *See* Compl. ¶ 38. That is, Plaintiff paid money she did not owe.

Plaintiff's alleged financial loss satisfies the elements of standing. First, it is a concrete pocketbook injury. *See Brown v. Nat'l Football League, Inc.*, No. 25-CV-01220 (PAE), 2026 WL 279599, at *4 (S.D.N.Y. Feb. 3, 2026) ("Financial loss is a 'classic pocketbook injury sufficient to give plaintiff standing.'") (quoting *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 636 (2023)); *Carrasquillo v. Nat'l Credit Sys., Inc.*, No. 24-CV-01029 (AT), 2025 WL 522276, at *2 (S.D.N.Y. Feb. 18, 2025) ("Although mere 'confusion' caused by false or misleading debt-collection efforts is unlikely to satisfy Article III's concrete injury requirement, courts analyzing Article III standing in the context of FDCPA violations have found concrete injuries where a defendant's alleged misrepresentation caused a plaintiff to pay extra money . . . ."). Second, as to causation, the argument that Plaintiff's injury was not fairly

7

traceable to Defendant's conduct defies reason. As alleged, Plaintiff directly suffered the financial loss because she did exactly what Defendant demanded. Finally, Defendant does not challenge redressability. Accordingly, Plaintiff has sufficiently established standing at the pleading stage.

### III.    PLAINTIFF STATES A CLAIM UNDER THE FDCPA

Defendant separately moves to dismiss the Complaint for failure to state a claim under the FDCPA. "To plead an FDCPA violation, [P]laintiff must allege that (1) [s]he is a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Hussein v. Occupant of Off. of CEO & CFO of Bank of Am., Nat'l Ass'n*, No. 24-CV-04477 (RPK) (MMH), 2025 WL 2783108, at *4 (E.D.N.Y. Sept. 30, 2025). Only the third element is in dispute here. Plaintiff alleges that Defendant violated FDCPA Sections 1692e(2)(A), 1692e(10), and 1692f(1). *See* Compl. ¶¶ 39–60. Defendant argues the Complaint fails to plausibly allege a violation of any of those sections.

Sections 1692e and 1692f of the FDCPA "share the goal of protecting consumers from abuse by debt collectors." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017). Both sections "are broad, potentially overlapping, and are not mutually exclusive." *Id.* at 136 (quoting *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014)). "Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen." *Id.* It prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the "false representation of . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and the "use

of any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10). "Section 1692f, meanwhile, is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias*, 875 F.3d at 136. It prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Whether a debt collector's communication is false, deceptive, or misleading (in violation of Section 1692e) or constitutes an unfair or unconscionable means of collection (in violation of Section 1692f) "is determined from the perspective of the objective least sophisticated consumer." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012)). "Under this standard, collection [communications] can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id.*

Defendant argues that Plaintiff fails to allege a violation of the FDCPA because (1) the Collection Letter accurately stated that a balance was due on the Debt (whether or not Plaintiff was responsible for paying) and (2) Plaintiff merely challenges the validity of the Debt, which is not a cognizable claim under the FDCPA. Defendant again mischaracterizes the Complaint. Plaintiff alleges that Defendant sent the Collection Letter demanding payment from her even though Defendant knew or should have known that she was not liable for any amount owed. Compl. ¶¶ 23–31. Thus, Plaintiff alleges that Defendant misrepresented the character or legal status of the debt—*i.e.*, that Plaintiff was responsible—and attempted to collect an invalid debt. These allegations are sufficient to satisfy the third element of an FDCPA claim. *See Iacovo v. Magguilli*, No. 24-CV-04372 (NCM) (ARL), 2025 WL 1135471, at *9 (E.D.N.Y. Apr. 17, 2025)

9

("Plaintiff sufficiently alleges that she did not in fact owe the debt that was the subject of the Collection Action—and that defendants should have known she did not owe the debt—and therefore plausibly states a claim pursuant to Section 1692e."); *Wong v. Alt. Claims Mgmt., LLC*, No. 17-CV-03133 (ER), 2017 WL 5635533, at *3 (S.D.N.Y. Nov. 22, 2017) (denying motion to dismiss where plaintiff alleged debt collector "sent him a notice requesting a payment that he did not, in fact, owe"); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) ("District courts have found that an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e."). Such a claim is distinct from a mere dispute over the validity of the Debt. *See Barrios v. Enhanced Recovery Co., LLC*, No. 15-CV-05291, 2018 WL 5928105, at *4 (E.D.N.Y. Nov. 13, 2018) ("The premise of such liability is not that the debtor has attempted to collect from the wrong person *per se*, but that they have made a false representation about the character of the debt— namely, about the person who owes it."). Defendant's alleged conduct therefore falls squarely within the acts proscribed by Section 1692e. Defendant does not address whether Section 1692f similarly applies, and the Court will allow that claim to proceed as well.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED. The Clerk of Court is respectfully directed to terminate Dkt. No. 16.

Dated: March 31, 2026
New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge

10